*178
By the Court

Jenkins, J.,
delivering the opinion.
By the third clause of his will, testator gives certain property to his wife during her life or widowhood; and, upon her death or intermarriage, to be “equally divided, share and share alike, between his five sons, who are specifically named ; and if either of his said sons should die without leaving issue at the time of his death, or born within nine months thereafter, then his said share, in remainder, is to be equally divided among the survivors, share and share alike.”
By the twelfth clause, he gives the entire residuum of his estate to “be equally divided between his said five sons, share and share alike, and if either of them should die without leaving issue living at the time of his death, then his share to go to his surviving brothers, and the child or children of such of them as may be dead — the division to be made when Thomas J. Bartlett (who was the youngest) arrives at the age of twenty-one years, or at his death, if he should die during his minority.”
The question arising in the case is, whether William A. Bartlett, one of the five sons who survived his mother, and was living when the residuum was divided, under the twelfth clause, and having received his distributive share under each of the two clauses, died, leaving no children surviving, but a widow, had an absolute estate in the property, which descended to his heir-at-law, or whether, on his death, under the circumstances stated, the limitation over took effect in favor of his surviving brothers.
In the mind of the testator did the dying “without having child or children surviving,” upon the happening of which the share of any son so dying is limited over to his surviving brothers, relate to any definite contingency; or did he intend the limitation over to take effect upon the death of either, dying childless, at any time.
If the former, and if he survived the contingency contemplated, William A. Bartlett had, at the time of his death, an estate of inheritance absolute; if the latter, he had either a life estate, with contingent remainder, to his surviving brothers, or *179 an estate of inheritance, defeasible upon his dying childless, with limitation over to the same persons.
1. It is exceedingly difficult, if not impossible, to lay down any general rule which shall govern cases of this character, further than this, that Courts shall diligently search for testamentary intention, as well in the context as in the particular clause of a will to be coñstrued.
It is observable, however, in the examination of cases reported, that Courts in England as well as in America, are averse to the adoption of a construction which postpones indefinitely the absolute vesting of estates. In Home vs. Pillans, 8th Con. English Chancery, 434, Lord Brougham, reversing the decree of the Master of the Rolls, spoke of the inconvenience of holding the absolute vesting to be suspended during the life of the legatee, “ which was a construction the Court could never adopt but from necessity.”
Mr. Jarman, in discussing the question, “ to what period, words referring to death, coupled with a contingency, relate,” after considering cases in which “the gift to the person on whose death, under the circumstances described, the subsequent gift was to arise, was immediate,” adds, “but where the two concurrent or alternative gifts are preceded by a life, or other partial interest, or the enjoyment under them is otherwise postponed, the way is open to a different construction, namely, that of applying the words in question to the event of death occurring before the period of possession or distribution.” In construing the 3d clause of Bartlett’s will, we recognize the creation of a precedent life estate in the wife; and in construing the 12th clause we encounter a postponement of the enjoyment of the gift to the arrival of full age of the youngest sou. Then, if Mr. Jarman’s rule be correct, the words in the third clause, “should die without leaving issue at the time of his death, or born within nine months thereafter,” must be regarded as applying to the time when the life estate terminated; and the same words in the 12th clause, as referring to the division ordered to be made when the youngest son should attain the age of twenty-one years. The result would be, that each of the sons surviving the widow, and receiving a distributive share of the *180 property in which she had a life estate, took an absolute estate in it; and each being in life when the youngest son, (Thomas J.) became twenty-one years of age, and receiving a distributive share of the residuum, took an absolute estate in it.
In Yates, administrator, vs. Mitchell et al., 1 Rich. Eq., 265, the Court of Appeal of South Carolina certainly did not follow the rule suggested by Mr. Jarman. There, there was a life estate to the wife, with remainder to the children, with this clause added : “And should any of my said children die without leaving issue living at the time of his or her death, then the share or shares of such child or children, so dying as aforesaid, shall go to the survivor or survivors of my said children,” etc. It was “held that the limitation to the survivor or survivors was not confined to the life of the wife, and that the share of a son who survived her, and then died without issue, went over to the surviving children of testator.”
We note, however, that in the case of Dehay and wife et al. vs. Porcher, Ibid., decided at the same term, where there was a life estate to the wife, with remainder to two daughters, and to their issue, to be equally divided between them; and in a subsequent clause it was provided: “in case of the death of either of my daughter without lawful issue, living at her death, I then give the whole of my estate, as subject to division among them,, to my surviving daughter,” it was held that “the contingency on which the property was to vest in the issue, as purchasers, or go over to the survivor, was determined by the determination of the life estate, and that each daughter, having at least a fee conditional, and having issue, could alienate the plantation.”
Of course we do not mean to imply that there is any inconsistency in these rulings, but, as will presently appear, the latter, if followed, would effect the same result under the third clause of Bartlett's will as would ensue from the application of Mr. Jarman's rule, though for a different reason. In that third clause the qualifying words are, “and if either of my said sons should die without leaving issue at the time of his death, or within nine months thereafter, then his said share, in remainder, *181 is to be equally divided among the survivors, share and share alike,” etc.
In Dehay vs. Porcher, the Court held that the words, “ as subject to division among them,” took the case out of the rule in Yates vs. Mitchell. Chancellor Harper, remarking upon them, says: “This, of course, can relate to no period beyond the mother’s death, when the property, being divided as directed, could no longer remain subject to division.” So we think the words occurring in Bartlett’s will, “ his said share, in remainder, is to be equally divided, share and share alike, among the survivors,” can relate to no period beyond the mother’s death, since that event necessarily converted the estate in remainder intoan estate in -possession. Upon her death, in obedience to the will, the property in which she had a life estate was divided among the sons. William A. Bartlett took possession of his share, and there was no after moment of time in which he could be said to have a “ share in remainder.” These words, therefore, as effectually exclude the idea of a “dying without leaving child or children, at any time,” as do the words, “ as subject to division.”
The case of Horne vs. Pillans, before referred to, carefully reviews the authorities on this subject, and it will be found that the rule adopted by Mr. Jarman is in full accord with the conclusion reached by the Lord Chancellor in that case.
2. But in the case we are considering, the will itself furnishes a rule of construction. We have already quoted the third clause, which is one of those to be construed. By the fourth item, the testator gives to a grand-son, M. R., a legacy, to be paid over to him when he shall attain to the age of twenty-one, and then follow these words : “And should my grandson die without issue at the time of his death, or before he shall attain the age of twenty-one years, his said legacy above bequeathed shall remain and go to my five sons before mentioned, or the survivors of them, to be divided equally among all of them living at that time, and the children of such of them as may have died before the said M. JR.” There can be no question in this clause as to the event to which survivorship among the five sous relates, viz : to the death of the life-tenant; and it is *182 no less certain that those of the five who survive him take an absolute estate, each, in his share of the remainder.
By the fifth item, the testator bequeaths certain property in trust for his daughter, S. I). Then come the words, “ And should she die without leaving issue at the time of her death, then this said negro girl, slave, and her increase, to vest in remainder in said five sons, in’the same manner before mentioned in the previous items, 3d and 4th.” Now, the special character of this trust remainder, as whether absolute or with a limitation over, on the happening of some future contingency, is not in the clause itself; it can only be ascertained by following the reference which is to the third and fourth items. But unless the remainder in the third and fourth items be the same, the reference furnishes no solution. The testator himself requires that they be made to agree; in other words, he must be understood as declaring, in the fifth item, that he meant, by the third and fourth items, to create for his five sons precisely the same sort of remainders.
It will be remembered that, upon authority, we made the third clause to create just such a remainder as the unmistakable language of the fourth item imports. But to those not satisfied with that conclusion, (apart from the context,) we now submit the question, conceding the third to be of doubtful construction, (and certainly nothing more can be claimed against our reading) since we are required to make the third and fourth agree, which shall govern, the doubtful or the certain? But this is not all. By the sixth item testator bequeaths in trust for his daughter, E. W., certain slaves, with remainder at her death, to her surviving issue, if any, and continues, “but, failing to leave issue then living, then the remainder to vest, in fee, in my said five sons, in the same manner as the foregoing remainders are directed to vest in them.” The language of the sixth item, creating the contingent remainder in the five sons, differs from that of the fifth — first, in that it expressly discloses that, upon the happening of the contingency, the remainder shall vest in fee,” which, of itself, imports absoluteness; and, secondly, in that he superadds that this vesting “in fee,” is “in the same manner as the foregoing remainders are directed io vest in them.”
*183 It is apparent, from a perusal of this will, that the chief objects of the testator’s bounty were these five sons; that he had, in relation to them, in his mind, a distinct dispositive scheme, however variant the language used in the 3d, 4th, 5th and 6th clauses, by which contingent remainders accruing should vest absolutely in those of them living at the time of the accrual, and the children of those then dead.
3. The light, then, thrown directly upon the third clause, is reflected with great power upon the twelfth. There the devise to the same five sons is preceded by no life estate or other partial interest, but the possession and enjoyment were postponed for a considerable time, viz: until the majority of the youngest son, when a distribution was desired to be made. And as the death of one or more of the five in that interval was likely to occur, the testator provided, “if either of them should die without leaving issue living at the time of his death, then his share to go to his surviving brothers, and the child or children of such of them as may be dead.” If this item were considered without reference either to the authorities or the context, it would, perhaps, bear either of two constructions without violence to the language used. First, that the dying “without leaving issue living at the time of his death,” related to the distribution, or, secondly, that it had relation to no particular time or event, but whenever occurring would cause the share of one so dying to go over.
We think the weight of authority is in favor of the first, and that is certainly most consistent with the manifest general dis-positive scheme of the testator, regarding this peculiarly favored class of his beneficiaries. The last consideration, we think, is entitled to great respect. We therefore reverse the judgment below, and order that the demurrer be sustained and the bill dismissed.